# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYJUAN REED,<br>    *Plaintiff*,<br><br>v.<br><br>LIEUTENANT ROBERTS, *et al.*,<br>    *Defendants*. | No. 3:18-cv-00809 (JAM) |

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff TyJuan Reed was a prisoner in the custody of the Connecticut Department of Correction at the time of the filing of his complaint. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Lieutenants Roberts and Wojcik and Correctional Officers Aiello, Lis, Carey, Herbert, Wright, Pascarella, and Dejackome. After an initial review, I conclude that the complaint should proceed against all defendants on plaintiff's claim of excessive force in violation of the Eighth Amendment.

### BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for purposes of this initial ruling. On August 11, 2015, plaintiff was confined at the Manson Youth Institution in Cheshire, Connecticut. That day, correctional officials informed him that he was being transferred to another Department of Correction (DOC) facility. At approximately 4:45 p.m., Correctional Officer Fernandez (not a defendant) came to plaintiff's cell and removed all of his personal items. The majority of the property was stored in the facility's property room. Doc. #1 at 4–5 (¶¶ 14–17).

At approximately 8:30 p.m., plaintiff was escorted to the Admitting and Processing Room. There, a correctional transport unit driver placed him in transport restraints, including

wrist restraints, leg irons, and a tether chain with a lock. After being placed in the restraints, plaintiff began looking for the boxes that contained his property. He found only one, half-filled box, which he believed could not possibly contain all of his property. When plaintiff asked the officers in the room where the rest of his property was located, they were unable to tell him. Plaintiff then requested to speak with a supervisor before he was transferred. Correctional Officer Schulz called Lieutenant Roberts. *Id.* at 5 (¶¶ 18–23).

When Roberts arrived, plaintiff tried to explain the situation to her, but she said that she "did not want nor need to talk to [plaintiff], because regardless of what [he] said, [he] was still going to be transferred." While plaintiff was attempting to explain the problem, Roberts ordered Correctional Officers Schulz and Aiello to transfer plaintiff to the transport van. Schulz grabbed plaintiff's right arm, Aiello grabbed his left arm, and the two officers escorted plaintiff to the van. While en route, Aiello tightly squeezed plaintiff's arm, which prompted an exchange of words between him and plaintiff. When they reached the "sallyport," the area just inside the door leading to the transport van, Aiello grabbed plaintiff's head and slammed it against the window, stating, "I'll put you through this window you little mother (expletive)!" Roberts witnessed Aiello's actions but did not intervene. Schulz and Aiello then pinned plaintiff against the wall with the intent to hurt him, as Roberts called an emergency code. Plaintiff was then escorted back inside and placed in a restrictive housing unit ("RHU"). *Id*. at 6–7 (¶¶ 24–35).

While plaintiff was housed in the RHU, Lieutenant Wojcik asked him if he was going to comply with orders. Plaintiff did not respond because he was in a lot of pain due to the actions of Aiello and Schulz. Wojcik then stated, "I'm going to take your non-response as a yes," and instructed plaintiff to kneel on the floor. But plaintiff was unable to comply with the instruction because of the restraints he had on. Consequently, Correctional Officers Carey and Lis

physically forced plaintiff to kneel. While Carey and Lis pinned plaintiff's knees to the floor and chest to the bed, Wojcik tried to spray mace in plaintiff's face. Plaintiff turned his head such that that Wojcik sprayed him in the back of his head instead. Carey and Lis then held plaintiff's body and head in a fixed position while Wojcik sprayed plaintiff directly in his eyes, nose, and mouth. The chemical agent caused plaintiff to vomit and lose his breath. When he finally caught his breath, he said, "I couldn't breathe and I'm hurt!" *Id.* at 7–8 (¶¶ 36–47).

With the restraints still on, plaintiff was escorted to a shower area by Correctional Officers Herbert and Wright. While flushing the chemicals out of plaintiff's eyes, Herbert starting choking him while Wright held his head under water. The two officers yelled, "Get some water!" and plaintiff stated that he "was being choked!" Officers Herbert, Wright, Pascarella, and Dejackome then escorted plaintiff to another RHU cell. Once again, the officers forced plaintiff to kneel and then began hurting him by pulling and twisting his arms and legs. This caused the restraints to cut into plaintiff's skin on his wrists and ankles. *Id.* at 8 (¶¶ 48–54).

Afterward, the officers removed the transport restraints that plaintiff had on and placed him in in-cell restraints. Plaintiff was in a lot of pain and was unable to see. The officers removed the transportation jumper and T-shirt that plaintiff was wearing and left him in the RHU cell wearing only wet boxer shorts. *Id.* at 9 (¶¶ 56–59).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations

of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Plaintiff has brought his claims against each of the defendants in their individual capacities for money damages and in their official capacities for injunctive relief. Plaintiff has since been released from prison. Doc. #9. Accordingly, his request for injunctive relief is moot. All that remains for me to consider are his claims for money damages against defendants in their individual capacities.

Plaintiff alleges that the actions of the various defendants constituted excessive force, racial bias/discrimination, physical assault, physical injuries, cruel and unusual punishment, retaliation, and due process violations under the First, Fifth, Eighth, and Fourteenth Amendments.

### *Eighth Amendment claim for excessive force*

Plaintiff alleges that the defendants engaged in "excessive use of force, . . . physical assault, physical injuries, and cruel and unusual punishment." Doc. #1 at 3 (¶ 5), 4 (¶ 12). I construe plaintiff's allegations as a claim for use of excessive force, which may constitute cruel

and unusual punishment in violation of the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010) (*per curiam*).[1] As with all Eighth Amendment claims, excessive force claims have subjective and objective components. The subjective component focuses on "the defendant's motive for his conduct"; the objective component focuses "on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). In excessive force cases, the "core judicial inquiry" is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (internal quotation marks omitted)). The use of excessive force against a prisoner can constitute cruel and unusual punishment regardless whether the inmate suffers serious injuries. *See Hudson*, 503 U.S. at 4; *accord Wilkins*, 559 U.S. at 34, 36.

Plaintiff alleges that Roberts ordered Schulz and Aiello to transfer plaintiff to the van and that Schulz and Aiello did so with significant force by grabbing and tightly squeezing his arm. Plaintiff alleges that after he complained, Aiello slammed his head against a window and said "I'll put you through this window you little mother (expletive)!" This took place in front Schulz and Roberts, but neither intervened. Schulz and Aiello then pinned plaintiff against the wall in order to cause him pain. At this stage, I conclude that these allegations sufficiently state a claim that the defendants acted maliciously and sadistically to cause plaintiff harm. In the context of such malicious actions, I conclude that plaintiff's alleged injury of significant pain is adequate to state a plausible claim for relief. Moreover, I conclude that plaintiff has alleged a plausible claim for supervisory liability as to Roberts, who was present and failed to intervene.

---

[1] I assume that plaintiff at the time was a sentenced prisoner, such that it is the Eighth Amendment—rather than the Fourth Amendment or the Due Process Clause components of the Fifth and Fourteenth Amendments—that applies to his claim for excessive force. *See Brown v. Doe*, 2 F.3d 1236, 1242 n.1 (2d. Cir. 1993).

Plaintiff has also adequately alleged an Eighth Amendment excessive force claim against Wojcik, Carey, Lis, Hebert, Wright, Pascarella and Dejackome. Plaintiff alleges that all of these officers were directly involved in using excessive force without any apparent disciplinary need. Carey and Lis allegedly forced plaintiff to kneel by pinning him down while Wojcik sprayed him in the face with a chemical agent that caused plaintiff to vomit and lose his breath. Hebert allegedly choked plaintiff while Wright held his head under water. Herbert, Wright, Pascarella, and Dejackome allegedly escorted plaintiff to kneel and purposefully hurt him while twisting and pulling his arms and legs, causing the restraints on plaintiff to cut into his skin on his wrists and ankles. All of these allegations suffice to state a claim of excessive force against each defendant. Accordingly, I will allow plaintiff's Eighth Amendment claim to proceed against all defendants.

*Remaining claims*

Plaintiff references the First Amendment several times and mentions "actions of retaliation." Doc. # 1. The basic requirements for a constitutional retaliation claim are that a plaintiff engaged in speech or other conduct protected under the Constitution and that the defendant in turn took adverse action against the plaintiff because of the constitutionally protected speech or activity. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Other than his passing references to the First Amendment and to retaliation, plaintiff alleges no facts that could support a claim that any of the acts described in the complaint were retaliatory.

Accordingly, to the extent that plaintiff intended to allege a First Amendment retaliation claim, I will dismiss the claim.

Plaintiff also conclusorily states that he was subject to "racial bias/discrimination" but alleges nothing to suggest that any of the events in the complaint were motivated by or related to plaintiff's race. Doc. #1 at 4 (¶ 12). Accordingly, I will dismiss any claim for racial discrimination. Finally, the complaint references "due process" but does not discuss or identify any procedure plaintiff believes was deficient. *Id.* at 10 (¶ 69). Accordingly, I will dismiss any due process claim as well.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Plaintiff's Eighth Amendment claim for excessive force may proceed against all nine defendants in their individual capacities for damages. All other constitutional claims are **DISMISSED**. Plaintiff's claim for injunctive relief is **DISMISSED**.

(2) The Clerk shall verify the current work addresses for Roberts, Wojcik, Aiello, Lis, Carey, Herbert, Wright, Pascarella, and Dejackome with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses within twenty-one (21) days of this Order, and report to the Court on the status of the waiver requests on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service

7

of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed by **February 2, 2019**. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed by **March 4, 2019.**

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 6th day of August 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge