UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYJUAN REED, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:18cv809 (KAD) |
| | : | |
| LIEUTENANT ROBERTS, et al., | : | |
|     Defendants. | : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff TyJuan Reed, presently in the custody of the Connecticut Department of Correction (DOC), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Lieutenants Roberts and Wojcik and Correctional Officers Aiello, Lis, Carey, Hebert, Wright, Pascarella, and DeJackome, all DOC employees. He alleges the use of excessive force in violation of the Eighth Amendment.[1] Defendants filed a motion for summary judgment on all Eighth Amendment claims, to which the Plaintiff has objected. For the reasons that follow, the motion for summary judgment is GRANTED in part and DENIED in part.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard

---

[1]Plaintiff is proceeding *pro se* and *in forma pauperis.*

1

applies whether summary judgment is granted on the merits or on an affirmative defense...." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**FACTS[2]**

---

[2]The relevant facts are taken from the Defendants' Local Rule 56(a)(1) Statement with attached exhibits ("Def.'s SMF") (ECF No. 34-1); and Plaintiff's Local Rule 56(a)(2) Statement ("Plf.'s SMF(2)"), his Statement of Additional Material Facts ("Plf.'s SAMF"), and his affidavit attached thereto (Plf.'s aff.) (ECF No. 47). All of the facts set forth herein are undisputed unless otherwise indicated.

Plaintiff represents that at the time relevant to this action, he was 18 years old, measured 5 feet, four inches, and weighed 130 to 135 pounds. (Plf.'s aff. at ¶ 11).

On August 11, 2015, Officer Aiello was working second shift at Manson Youth Institution as a correction officer. (Def.'s SMF at ¶ 1). Around 8:48 PM, Correctional Transportation Unit (CTU) officers were supposed to escort Plaintiff out of the facility and into their vehicle so that he could transfer to another facility. *Id.* Defendants maintain, and Plaintiff denies, that he refused to cooperate with the CTU officers. (*Id;* Plf.'s SMF(2) at ¶ 1). Officers Schultz and Aiello agreed to escort Plaintiff to the CTU vehicle. (Def.'s SMF at ¶ 2).

Office Aiello secured Plaintiff's left side for the escort while Officer Schultz secured the right side. (Def.'s SMF at ¶ 3). Defendants represent that Plaintiff spit at Officer Aiello but missed hitting him with spit as they escorted him through the inner Sally Port doors, and that the officers stabilized him to the wall in the Sally Port area so that he could not spit at the officers again. (Def.'s SMF at ¶ 4). Plaintiff denies that he spit at Officer Aiello. (Plf.'s SMF(2) at ¶ 4). He represents that he and Officer Aiello had "words" and then Officer Aiello slammed his head against the window and threatened to put his head through the window. (Plf.'s SAMF at ¶¶ 7-8; Plf.'s aff. at ¶¶ 14-15).

Lieutenant Roberts, who was present in the area, called a code orange. (Def.'s SMF at ¶ 5). When staff responded, Officer Aiello was immediately relieved by Officer Carey from the incident and had no further involvement. (Def.'s SMF at ¶ 8). Officer Lis relieved Officer Schultz. (Def.'s SMF at ¶ 9). Officer Lis then held Plaintiff's right elbow and wrist and escorted him from the admitting and processing ("AP") area to the Bravo unit, which is the restrictive housing unit. *Id.* Officer Carey secured Plaintiff's left side for the escort. (*Id.* at ¶ 10).

3

Defendants represent that Lieutenant Crawford then supervised the escort to the Bravo unit; (*Id.* at ¶ 11); and Lieutenant Wojcik helped oversee the escort of Plaintiff from the AP room area to the restrictive housing unit. (*Id.* at ¶ 12). Plaintiff was escorted to Cell B-B01 to be placed on in-cell restraints. (*Id.* at ¶ 13). Because plaintiff was wearing Centralized Transportation Unit restraints, staff needed to replace them with the facility's restraints. (*Id.*).

Lieutenant Wojcik warned Plaintiff against making any hostile or threatening moves toward staff and asked Plaintiff whether he understood. (*Id.* at ¶ 14). Plaintiff did not respond. (*Id.*). Staff ordered Plaintiff to kneel down so that they could replace Plaintiff's restraints, but he refused to do so. (*Id.* at ¶ 15). Plaintiff was physically able to kneel down. (*Id.* at ¶ 16). In his deposition, Plaintiff represents that he did not resist, although he admits he did not comply with the staff order to kneel. (*Id.* at ex. 10, Plf.'s dep. at 33-34). The officers attempted to force Plaintiff to kneel down by the bunk. (*Id.* at ¶ 17). The officers represent, and Plaintiff denies, that Plaintiff was actively resisting. (*Id.*; Plf.'s SMF(2) at ¶ 17). Plaintiff maintains that he had already been stabilized to the floor on the mattress by Officers Carey and Lis when Lieutenant Wojcik sprayed him with the chemical agent. (Plf.'s SAMF at ¶ 13; Plf.'s aff. at ¶ 28).

Plaintiff has a long disciplinary report history, which includes disciplinary reports for fighting and assaults on staff. (*Id.* at ¶ 18). Lieutenant Wojcik represents that he viewed Plaintiff as a security threat due to his resistance to staff orders to kneel. (*Id.* at ¶ 19). He sprayed Plaintiff twice with a chemical agent in the facial area (*Id.* at ¶ 22). Defendants represent that Plaintiff stopped resisting after the second chemical agent spray. (*Id.* at ¶ 24).

Staff then escorted Plaintiff to the shower area in the restrictive housing unit. (*Id.* at ¶ 26). Officer Wright secured Plaintiff's left side by holding his left arm and the back of his jumpsuit

4

near his shoulder area during the decontamination. (*Id.* at ¶ 27). Defendants maintain, and Plaintiff denies, that he resisted efforts to decontaminate him. (*Id.* at ¶ 28; Plf.'s SMF(2) at ¶ 28). Defendants assert that he eventually complied, and staff rinsed his face under the water until he said, "Alright, I'm good." (*Id.* at ¶ 29). Plaintiff maintains that the defendants were choking him while holding Plaintiff "under water." (Plf.'s SAMF at ¶ 15; Plf.'s aff. at ¶ 33). Defendants assert that staff held him by his arms and his jumpsuit, and no one choked him during decontamination. (Def.'s SMF at ¶ 30).

After decontamination, staff, including Officers Wright, Hebert, Pascarella, and DeJackome, brought Plaintiff to a different cell so that Plaintiff could be housed in a cell that was clear of any chemical agent. (*Id.* at ¶ 32, exs. 5, 6, 8, 9). Staff placed Plaintiff in "in-cell" restraints. (*Id.* at ¶ 33). At his deposition, Plaintiff admitted that defendants put the in-cell restraints on Plaintiff appropriately. (*Id.* at ¶ 34, ex. 10).

**Discussion**

Plaintiff asserts five separate incidents of excessive force. He alleges excessive force on the basis of: (1) Officer Aiello's tightly squeezing his arm and slamming his head against a window, and Lieutenant Roberts' failure to intervene; (2) Officers Lis and Carey's holding him on the mattress while he was sprayed with a chemical agent twice; (3) Lieutenant Wojcik's spraying him with a chemical agent; (4) Officer Hebert's acts to choke him and Lieutenant Wright's holding him under water; and (5) Officers Hebert, Wright, Pascarella, and DeJackome's twisting his legs and arms while they placed him in the cell after the decontamination. Defendants maintain that they are entitled to entry of summary judgment in their favor on the merits of Plaintiff's excessive force claims or alternatively on the basis of

5

qualified immunity.

**Eighth Amendment**

The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim. *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted)). However, it is the force used, not the injury sustained, that "ultimately counts." *Id.* The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present). Indeed, a

6

malicious use of force constitutes a per se Eighth Amendment violation. *Blyden*, 186 F.3d at 263.

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

**Qualified Immunity**

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012) ). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) ).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal

quotations and citations omitted). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson* 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.' " *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*[2] In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of New York,* 612 F. 3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017).

**Officer Aiello**

In his complaint, Plaintiff alleges that Officer Aiello hurt his arm while escorting him and slammed his head into the window. In his affidavit, Plaintiff avers that he and Officer Aiello "began having words with one another" while he was being escorted through the Sally Port, and that Officer Aiello "slammed" his head against the window. (Plf.'s aff. ¶¶ 14, 15).

Defendants argue that they are entitled to entry of summary judgment because Officer Aiello did not use force in a malicious or sadistic manner or use an unreasonable amount of force in response to Plaintiff's conduct. Defendants support this assertion on the basis of declarations from Officer Aiello and Lieutenant Roberts. Officer Aiello states that he "stabilized Plaintiff to

the wall in the Sally Port area" after Plaintiff had spit but missed hitting him. (Def.'s SMF, ex. 1, Aiello declar. at ¶ 5). He represents further that he acted appropriately at all times used the minimal amount of force necessary. (*Id.* at ¶¶ 6, 9.) In her declaration, Lieutenant Roberts represents that she observed the officers stabilize Plaintiff against the wall in a safe and reasonable manner. (Def.'s SMF, ex. 2, Roberts declar. at ¶ 6). She states that Plaintiff's allegation that the officers slammed his head against the wall is untrue and that the officers used the minimal amount of force necessary to stabilize and maintain control of Plaintiff. *Id.* at ¶¶ 7, 8.

The video of this interaction begins after the Plaintiff is secured against the door. The security camera footage is too fleeting to see what transpired before the Plaintiff was secured. The Plaintiff denies spitting at Officer Aiello, the event which purportedly necessitated the force at issue. And the defendants deny the extent of the force allegedly used. These are material facts in dispute, rendering summary judgment on the merits of this claim improper.[3] In considering a motion for summary judgment, the Court cannot render credibility assessments. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 2017) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."). And because the qualified immunity analysis turns on the same factual questions regarding the circumstances that gave rise to the need for force and the actual force used by Officer Aiello, the Court cannot assess, as a matter of law, whether it was objectively reasonable for Officer Aiello to believe his conduct was not in violation of the Eighth

---

[3] Defendants' statement of undisputed facts and Officer Aiello's declaration and Plaintiff's Statement of Additional Facts and affidavit do not address the allegation that Officer Aiello hurt Plaintiff's arm during the escort. *See* Compl. at ¶ 27.

Amendment at the time. The motion for summary judgment on the claims of Officer Aiello's use of excessive force in violation of the Eighth Amendment is denied.

**Lieutenant Roberts**

Plaintiff asserts that Lieutenant Roberts violated his Eighth Amendment rights due to her alleged failure to intervene when Officer Aiello allegedly slammed his head against a window.

To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *See Jean–Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation and quotation omitted).

The factual questions relevant to Officer Aiello's use of force preclude the Court from finding that Lieutenant Roberts did not violate Plaintiff's Eighth Amendment rights or is entitled to qualified immunity. *See Brown v. Neddermann*, No. 3:18-CV-00577 (KAD), 2020 WL 60107, at *6 (D. Conn. Jan. 6, 2020) ("[Failure to intervene claim] is derivative of and dependent upon the Plaintiff's excessive force claim, for which the Court has already identified at least one genuine material fact in dispute. If the jury concludes that one or both of the Defendants used excessive force during the Plaintiff's arrest, the jury would then need to determine whether either defendant could have intervened with respect to the other's unconstitutional conduct (whatever it is determined to be) and the remainder of the issues presented by this claim, to include the

question of qualified immunity."). Accordingly, the motion for summary judgment as to Lieutenant Roberts is denied.

**Lieutenant Wojcik**

Defendants assert that Lieutenant Wojcik used the chemical agent to gain control over the situation and get Plaintiff to comply with orders. Defendants maintain that Officer Wojcik first sprayed Plaintiff with the chemical agent in the facial area—at which time he also accidentally sprayed staff members—and he sprayed Plaintiff a second time due to Plaintiff's continued resistance. (Def.'s SMF at ¶ 22). Lieutenant Wojcik represents that he viewed Plaintiff as a security threat because Plaintiff was actively resisting when staff tried to force him to kneel down, and he decided to use the chemical agent for staff safety and to stop Plaintiff from resisting staff orders. (Def.'s SMF at ¶ 19; ex. 4, Wojcik declar. at ¶¶ 10, 12).

"When reviewing the use of a chemical agent against a recalcitrant inmate, the court can find a constitutional violation only where the use of the chemical agent is malicious and sadistic. That the use may have been objectively unreasonable is insufficient to establish an Eighth Amendment claim." *Carolina v. Pafumi*, No. 3:12-CV-163 VLB, 2013 WL 1673108, at *3 (D. Conn. Apr. 17, 2013). Correction staff's use of a chemical agent on a "recalcitrant inmate" to force compliance with direct orders is not "malicious and sadistic," but rather a good faith effort to restore order. *Vazquez v. Spear*, No. 12-cv-6883 (VB), 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014).

Defendants have provided a video record of the incident. (Def.'s SMF, ex. 12, Video MYI-VID-15-750).[4] Where the parties present conflicting versions of an incident and video

---

[4]Defendants have provided other videos of the escort. The video at Exhibit 12 (hereinafter ("Video")) depicts the chemical spray, shower, and placement in-cell restraints.

evidence of the incident has been submitted on a motion for summary judgment, the Court must view the facts "in the light depicted" by the video of the incident. *See Scott v. Harris,* 550 U.S. 372, 380–81 (2007). The video shows Plaintiff in the cell. He is secured by two officers and others are present. The officers are then seen struggling with Plaintiff as they force him down; additional officers begin to assist in securing the Plaintiff, and a voice can be heard yelling, "Spray him," and "Keep him down." From the moment the officers begin to struggle with the Plaintiff to the time that it is clear the chemical agent was released, is a matter of seconds. It is clear however that even after the chemical agent was used, the Plaintiff continued to resist the officers' commands. Indeed, his resistance continued until well into the decontamination process when he began to capitulate to the officers' directions. Plaintiff's claim that he was stabilized in restraints on the mattress at the time of the spraying is simply belied by the video. (Plf.'s SAMF ¶ 13; Plf.'s aff. at ¶ 28). Nor does the video evince any commentary or behavior on the part of Lieutenant Wojcik or other members of the correctional staff which might raise the specter of an inappropriate motive for the deployment of the chemical agent. The court concludes therefore that the video establishes that the use of the chemical agent was a good faith effort to restore order as opposed to a malicious and sadistic act to cause harm, *Hudson*, 503 U.S. at 7, and the motion for summary judgment as to Lieutenant Wojcik is granted.[5]

### Officers Lis and Carey

---

[5] The court notes that even if it were determined that the chemical agent was not necessary to restoring order, the circumstances depicted on the video make it clear that it would have been objectively reasonable for Lieutenant Wojcik to believe his use of the chemical agent did not violate a clear constitutional right and he would be entitled to qualified immunity. *See e.g. Carolina v. Pafumi*, No. 3:12-CV-163 VLB, 2013 WL 1673108, at *3 (D. Conn. Apr. 17, 2013).

Defendants argue that Plaintiff cannot establish an excessive force claim based on Officer Lis and Carey's conduct to force him to kneel after he refused to comply with the staff's orders to do so. In his opposition to the motion for summary judgment, Plaintiff makes clear that his excessive force claim stems from Officers Lis and Carey's participation in the spraying by holding his head and body down on the mattress, rather than the officers' efforts to force him to kneel. (Opposition, ECF No. 51 at 7-8.) He argues that the fact he was already stabilized on the mattress in full restraints indicates that Lis and Carey acted in a malicious and sadistic manner. (*Id.*) This claim is analogous to a failure intervene claim based on a defendant's "tacit collaborat[ion]" in the misuse of force. *See Figueroa*, 825 F.3d at 106. Because the Court has already concluded that Lieutenant Wolcik is entitled to summary judgment in connection with the deployment of the chemical agent, these derivative claims against Lis and Carey also fail, as a matter of law. The motion for summary judgment as to Officers Lis and Carey is granted.

**Officer Hebert and Lieutenant Wright**

Plaintiff alleges that while he was being decontaminated in the shower, Officer Hebert choked him, and that Lieutenant Wright held him under water.[6] (Compl., ECF No. 1 at ¶ 49; Opposition, ECF No. 51 at 8). Officer Hebert avers that he held Plaintiff by the wrist and his jumpsuit while he was in the shower. (Def.'s SMF at ¶ 30, ex. 6, Hebert's aff. at ¶ 6). Officer Wright also avers that he held Plaintiff by his arms and jumpsuit during the decontamination. *Id.* at ex. 7, Wright aff. at ¶ 10). In his deposition, Plaintiff described Officer Hebert's hand wrapped

---

[6] In his affidavit, Plaintiff represents that both Officers Hebert and Wright were choking him, (Plf.'s aff. at ¶ 33), although his Statement of Additional Facts indicates that, according to the video evidence, "you could hear the plaintiff in distress, say out loud "he's choking me", and see one of the defendants hands squeezing the back of the plaintiff neck, while defendants held plaintiff under water." The Court considers Plaintiff's claim in accordance with his allegations that "CO Hebert started choking [him], while Defendant CO Wright held me under water."

13

around the front of his neck. (*Id.* at ¶ 31, ex 10 at p. 39).

On the video, Plaintiff is shown being held under the shower water; Plaintiff can be heard complaining of being choked at approximately the same time that a noise (sounding like the metal shower being kicked) can also be heard. (Video, 8:23-26). However, the viewer cannot discern whether an officer may be holding Plaintiff in a manner that choked him. The video shows that during the remainder of the shower, Plaintiff is able to speak, and he exhibits no signs of choking. (Video, 8:28-8:54). Nevertheless, review of the video fails to establish as a matter of law that Officer Hebert was <u>not</u> choking Plaintiff at the time he calls out, "He's choking me." Construing the facts most favorably to Plaintiff, the Court finds disputed issues of fact preclude entry of summary judgment in Officer Hebert's favor on the merits of the excessive force claim and on the basis of qualified immunity.

However, the Court finds no evidence to support the inference that Officer Wright acted maliciously or sadistically by holding him under the shower during the decontamination. And even if his role in the decontamination process is deemed a violation of the Eighth Amendment, he is entitled to qualified immunity because it was objectively reasonable for him to believe his conduct was not unlawful at the time. *See Simpson*, 793 F.3d at 268. The motion for summary judgment as to Officer Hebert is denied. The motion for summary judgment as to Officer Wright is granted.

**Officers Pascarella, DeJackome, Hebert and Wright**

Plaintiff alleges that Officers Pascarella, DeJackome, Hebert and Wright caused him pain by pulling and twisting his arms and legs while they placed him in in-cell restraints.[7] (Compl.,

---

[7] Defendants' memorandum in support of the motion addresses this claim as directed only against Officers Pascarella and DeJackome. However, Plaintiff has alleged the involvement of Pascarella, DeJackome, Hebert, and Wright in

ECF No. 1 at ¶¶ 52-54). Plaintiff asserts that the officers pulled hands and feet, which caused the restraints to cut into and swell his wrist and ankle. (Opposition, ECF No. 51 at 9).

Defendants maintain that the video establishes that staff acted appropriately while placing him in in-cell restraints. However, the video is not conclusive as it is difficult to see the process by which the in-cell restraints were put on the Plaintiff. Notwithstanding, at his deposition, Plaintiff admitted that he had no issues with the application of the in-cell restraints, and he agreed that they were put on appropriately.[8] *Id.* at ¶ 34. In light of this admission, no reasonable jury could find that the defendant officers acted sadistically or maliciously in placing the in-cell restraints on Plaintiff.

The motion for summary judgment is GRANTED as to claims against Officers Pascarella, DeJackome, Hebert and Wright arising out of their role in placing Plaintiff in in-cell restraints.

**CONCLUSION**

For the reasons stated above, the defendants' motion for summary judgment [ECF No. 34] is GRANTED in part and DENIED in part.

The motion for summary judgment is GRANTED as to Plaintiff's claims of excessive force against Lieutenant Wojcik, and Officers Lis, Carey, Wright, DeJackome and Pascarella. The motion for summary judgment is DENIED as to the claims against Officer Aiello and

---

the alleged harmful pulling and twisting of his arms. (Compl. at ¶¶ 52-54; *see also* Initial Review Order, ECF No. 13 at 6).

[8] Q: Okay. And do you have any issues with how they – the application of the in-cell restraints?
A: No.
Q: Okay. So, they put those on appropriately. A: Yes.
(Plf.'s deposition, ex. 10, p. 43: 3-7).

Lieutenant Roberts and DENIED as to the claims Officer Hebert with respect to the decontamination process. The clerk is instructed to terminate Lieutenant Wojcik and Officers Pascarella, Wright, Lis, Carey and DeJackome as defendants in this action.

**SO ORDERED** this 6th day of February 2020, at Bridgeport, Connecticut.

                                         __/s/_____
                                         Kari A. Dooley
                                         United States District Judge